IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TRACY NIX,

     Plaintiff,

          v.

ADVANCED UROLOGY INSTITUTE OF
GEORGIA, P.C.,

     Defendant.

Civil Action No.
1:18-cv-04656-SDG

## OPINION AND ORDER

This matter is before the Court on Plaintiff Tracy Nix's motion for partial summary judgment [ECF 56] and Defendant Advanced Urology Institute of Georgia, P.C.'s (Advanced Urology) motion for summary judgment [ECF 77]. For the following reasons, and with the benefit of oral argument, Nix's motion is **DENIED** and Advanced Urology's motion is **GRANTED**.

## I.    BACKGROUND[1]

Nix is deaf and primarily communicates using American Sign Language (ASL).[2] Nix also reads and writes in English.[3] Advanced Urology is a medical

---

[1]  The following facts are undisputed by the parties or otherwise supported by undisputed evidence in the record.

[2]  ECF 88, ¶ 1.

[3]  *Id.* ¶ 2.

practice specializing in urological health.[4] Prior to its involvement with Nix, Advanced Urology had treated deaf patients, but did not have an ongoing agreement with an interpreting agency.[5]

On February 5, 2018, Nix contacted Advanced Urology through a video relay service to make an appointment at its facility in Snellville, Georgia.[6] Due to the emergency nature of Nix's symptoms, the parties scheduled the appointment for February 7.[7] Nix did not request an in-person interpreter during this initial call.[8] The next morning, Nix called back and requested an interpreter.[9] That request was forwarded to Missy Sherling—Advanced Urology's Vice-President of Clinical Strategy—who, in turn, initiated a call with Steve Karasick and Kelly Brauer, Advanced Urology's then-Chief Executive Officer and Surgery Center Director, respectively.[10] Brauer, Karasick, and Sherling discussed Nix's request, concluded they did not have sufficient time to procure an interpreter

---

[4]   *Id.* ¶ 3; ECF 89-1, ¶ 16.

[5]   ECF 89-1, ¶ 18.

[6]   *Id.* ¶ 18.

[7]   *Id.* ¶ 24; ECF 72 (Nix Dep. Tr. 78:11–21).

[8]   ECF 72 (Nix Dep. Tr. 81:10–20).

[9]   ECF 89-1, ¶ 25.

[10]  *Id.* ¶ 27.

through their usual interpreting agency, and decided to look for other ways to fulfill Nix's request.[11]

   While attempting to locate an interpreter, Sherling learned that an Advanced Urology employee, Samantha Fazzolare, had a friend, Dalton Belew, who "could do basic signing."[12] Fazzolare did not inform Sherling of Belew's profession or represent Belew as a trained or professional interpreter.[13] Fazzolare provided Sherling with Belew's contact information.[14] Sherling did not, however, conduct any investigation into Belew's background or qualifications as an interpreter.[15] Based on Sherling's subjective belief that Belew previously interpreted for another medical practice, Sherling and Karasick made the decision to ask Belew to interpret Nix's appointment.[16] Belew agreed.[17] Contrary to Sherling's beliefs, Belew was not certified in ASL,[18] had never interpreted in a

---

[11]   ECF 66 (Sherling 30(b)(6) Dep. Tr. 15:2–23).

[12]   *Id.* at 17:18–18:3.

[13]   ECF 76 (Fazzolare Dep. Tr. 18:6–19:3).

[14]   ECF 89-1, ¶ 33.

[15]   ECF 66 (Sherling 30(b)(6) Dep. Tr. 27:3–21).

[16]   *Id.* at 74:18–25.

[17]   ECF 89-1, ¶ 38.

[18]   ECF 68 (Belew Dep. Tr. 12:14–16).

medical setting,[19] and characterized his own skills as "intermediate."[20] Belew had instead been previously employed as a video editor, floor manager at a news company, and at a dental office in an administrative position and as a sterilizer.[21] After securing Belew's agreement, Sherling called Nix and informed her an interpreter had been secured for her appointment.[22]

On February 7, Nix and Belew arrived at Advanced Urology for Nix's appointment. The parties dispute many of the specific details of the appointment. However, the evidence is undisputed that Nix and Belew experienced significant difficulties communicating with each other through ASL. Due to Belew's struggles, and his wearing of scrubs bearing Advanced Urology's insignia, Nix became convinced Belew worked as a nurse, not an actual interpreter.[23] At some point, Nix abandoned communication with Belew entirely and began writing notes and using gestures to communicate directly with the medical staff.[24] Belew nonetheless remained in the room while Nix partially undressed and

---

19   *Id*. at 13:2–5.

20   *Id*. at 14:11.

21   *Id*. at 10:2–12:13.

22   ECF 89-1, ¶ 41.

23   *E.g.*, ECF 72 (Nix Dep. Tr. 118:1–119:3).

24   ECF 89-1, ¶¶ 67–68.

underwent two non-invasive ultrasounds.[25] At the conclusion of the appointment, Nix and Belew filled out various forms affirming that Belew acted as an interpreter during the entire appointment.[26] Advanced Urology ultimately issued Belew a check for $100 for his services.[27] After her appointment, Nix and her husband complained to Advanced Urology regarding its decision to use Belew as an interpreter; Advanced Urology apologized and refunded their $40 co-pay for the appointment.[28]

Nix initiated this action on October 5, 2018.[29] On January 3, 2019, Nix filed her Amended Complaint, asserting six claims against Advanced Urology for: violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* (Count I); violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* (Count II); violation of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116 (Count III); fraud (Count IV); negligence (Count V); and intentional infliction of emotional distress (Count VI).[30] On March 18, 2020,

---

[25]  ECF 88, ¶¶ 70–71.

[26]  *Id*. ¶¶ 39-45.

[27]  *Id*. ¶ 46.

[28]  *Id*. ¶¶ 50–51.

[29]  ECF 1.

[30]  *See generally* ECF 12.

Advanced Urology filed its motion for summary judgment on all of Nix's claims.[31] Nix filed her motion for partial summary judgment on her disability discrimination claims the same day.[32] Both parties filed oppositions to the cross motions on April 15, 2020.[33] The parties filed respective replies on April 29.[34]

## II.   LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment has the initial burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant meets its burden, the non-movant must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324. A fact is considered "material" only if it may "affect the outcome of the suit under the governing law." *BBX Cap. v. Fed.*

---

[31]   ECF 55. Advanced Urology later filed a corrected motion for summary judgment [ECF 77].

[32]   ECF 56.

[33]   ECF 86; ECF 89.

[34]   ECF 90; ECF 91.

*Deposit Ins. Corp.*, 956 F.3d 1304, 1314 (11th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *BBX Cap.*, 956 F.3d at 1314 (citing *Anderson*, 477 U.S. at 248) (punctuation omitted).

In opposing a motion for summary judgment, the non-movant "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Sears v. Roberts*, 922 F.3d 1199, 1207 (11th Cir. 2019). If the non-movant relies on evidence that is "merely colorable, or is not significantly probative, summary judgment may be granted." *Likes v. DHL Express (USA), Inc.*, 787 F.3d 1096, 1098 (11th Cir. 2015). But the Court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Sears*, 922 F.3d at 1205 (citing *Anderson*, 477 U.S. at 249). The Court must view the evidence in a "light most favorable to the party opposing summary judgment" and "draw[ ] all justifiable inferences in the opposing party's favor." *Rogers v. Mentor Corp.*, 682 F. App'x 701, 708 (11th Cir. 2017). *See also Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (quoting *Anderson*, 477 U.S. at 255).

Both Nix and Advanced Urology filed motions for summary judgment on certain claims. This posture does not change the Court's analysis; the same standard is applied to each party's separate motion. *Ga. State Conference of NAACP v. Fayette Cty. Bd. of Comm'rs*, 775 F.3d 1336, 1345 (11th Cir. 2015) ("In practice, cross motions for summary judgment may be probative of the nonexistence of a factual dispute, but this procedural posture does not automatically empower the court to dispense with the determination whether questions of material fact exist.").

## III.   DISCUSSION

### a.   Nix's Federal Law Claims

Nix alleges Advanced Urology discriminated against her on the basis of her hearing disability by failing to provide a qualified interpreter in violation of three federal statutes: the Americans with Disabilities Act (ADA), the Rehabilitation Act (RA), and the Patient Protection and Affordable Care Act (ACA). In the Amended Complaint, Nix seeks injunctive relief under all three statutes and monetary damages under the RA and ACA.

Title III of the ADA applies to privately operated public accommodations and prohibits discrimination "on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(a). Section 504 of the RA similarly provides

that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. Finally, Section 1557 of the ACA provides that "an individual shall not . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116. Although each statute serves an independent purpose, all of Nix's claims under them are substantively governed by the same standards. *E.g.*, *Bustos v. Dignity Health*, No. CV-17-02882-PHX-DGC, 2019 WL 3532158, at *1 (D. Ariz. Aug. 2, 2019) ("[T]he elements of a discrimination claim under [the ACA, ADA, and RA] are similar."); *Cummings v. Total Eye Care*, No. 4:18-cv-546-A, 2019 WL 95606, at *2 (N.D. Tex. Jan. 3, 2019) ("[T]he same analysis applies to each of [plaintiff's] federal law claims" under the ACA, ADA, and RA). *See also Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 830–31 (11th Cir. 2017) (hereafter, *Silva I*) ("ADA and RA claims are governed by the same substantive standard of liability."); *Bax v. Doctors Med. Ctr. of Modesto, Inc.*, 393 F. Supp. 3d 1000, 1012 (E.D. Cal. 2019) ("A claim under the ACA is enforced through Section 504 of the Rehabilitation Act and is subject to the same standards.").

### i.    Injunctive and Declaratory Relief

In the Amended Complaint, Nix seeks injunctive relief under all three statutes. In her response in opposition to Advanced Urology's motion for summary judgment, Nix expressly withdrew these claims.[35] During oral argument, Nix also withdrew any corollary claims for declaratory relief. Therefore, Advanced Urology is entitled to summary judgment on those claims.

### ii.    Compensatory Damages

Nix seeks compensatory damages under the ACA and RA. To succeed, Nix "must prove that . . . she was excluded from participation in or denied the benefits of the hospital's services, programs, or activities, or otherwise was discriminated against on account of her disability." *Silva v. Baptist Health S. Fla., Inc.*, No. 19-12386, 2020 WL 7063826, at *3 (11th Cir. Dec. 3, 2020) (hereafter, *Silva II*) (citing *Silva I*, 856 F.3d at 835). *See also McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1146–47 (11th Cir. 2014) ("To prevail on a claim for compensatory damages under either the RA or the ADA, a plaintiff must show that a defendant violated [her] rights under the statutes and did so with discriminatory intent.") (citing *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 342 (11th Cir. 2012)). Advanced Urology does not contest that Nix is a qualified

---

[35]    ECF 89, at 12.

individual with a disability. Rather, it argues Nix has not presented evidence showing she could not effectively communicate with her medical providers during her appointment, and even if she has, there is no evidence of intentional discrimination.

### 1.      Effective Communication

A hospital—such as Advanced Urology—violates the disability anti-discrimination statutes "when it fails to provide appropriate auxiliary aids and services to a deaf patient, or a patient's deaf companion, where necessary to ensure effective communication." *Silva II*, 2020 WL 7063826, at *3 (citing *Silva I*, 856 F.3d at 831). According to Nix, Advanced Urology's failure to provide her with a competent ASL interpreter is sufficient to show—or at least creates a triable issue of fact—that it failed to provide appropriate auxiliary aids necessary for effective communication. Advanced Urology, conversely, posits a combination of Belew's interpreting and Nix's exchange of handwritten notes with her medical providers is enough to demonstrate effective communication.

In this context, "[a]ppropriate auxiliary aids include live interpreters or video remote interpreting systems, among other aids such as computer-aided transcription services, written materials, and exchange of written notes." *Martin v. Halifax Healthcare Sys., Inc.*, 621 F. App'x 594, 601 (11th Cir. 2015) (citing 28 C.F.R.

§ 36.303(b)). The Eleventh Circuit has squarely held that "[d]eaf patients are not entitled to an on-site interpreter every time they ask for it." *Silva II*, 2020 WL 7063826, at *3 (citing *Silva I*, 856 F.3d at 835). A hospital may satisfy its statutorily-imposed obligations by relying on alternative aids "[i]f effective communication under the circumstances is achievable with something less than an on-site interpreter." *Id*. "The type of aid that is necessary varies depending on the individual's communication method, the nature, length, and complexity of the involved communication, and the context in which the communication occurs." *Martin*, 621 F. App'x at 601. *See also Silva II*, 2020 WL 7063826, at *3 ("Whether a particular aid is effective 'largely depends on context, including, principally, the nature, significance, and complexity of treatment.'") (quoting *Liese*, 701 F.3d at 343). The inquiry must include whether Nix "experienced an impairment in . . . her ability to communicate medically relevant information with hospital staff" with a focus "on the effectiveness of the communication, not on the medical success of the outcome." *Silva II*, 856 F.3d at 831. Put another way, although "perfect communication is not required . . . the communication must still be effective." *Silva I*, 856 F.3d at 835 n.7.[36]

---

[36]   Because it demands an examination of all surrounding circumstances, "the question of whether a hospital has provided appropriate auxiliary aids to a

The parties here agree Nix is deaf and utilizes ASL as her primary means of communication. It is likewise undisputed Advanced Urology did not obtain an ASL-certified interpreter for Nix's appointment. It instead provided her with Belew—an individual with no medical experience who possessed, at best, "basic" or "intermediate" signing skills. What is more, there is ample evidence in the record that could lead a reasonable juror to find the communication between Nix and Belew ineffective. For example, Nix testified Belew repeatedly struggled to communicate even the most basic information—including his own name—during her appointment.[37] He used incorrect signs for certain words.[38] At times, Belew used gestures and body language to convey instructions.[39] At others, Belew simply did not know what to sign or could not understand what Nix attempted to communicate to him.[40]

---

deaf patient is generally a 'fact-intensive' inquiry that depends on context, especially the nature, significance, and complexity of the involved treatment." *Martin*, 621 F. App'x at 601–02 (citing *Liese*, 701 F.3d at 342). *See also Silva I*, 856 F.3d at 836 ("It is precisely because of this fact-intensive inquiry that an effective-communication claim often presents questions of fact precluding summary judgment.").

[37] *E.g.*, ECF 72 (Nix Dep. Tr. 98:22–99:5).

[38] *Id.* at 114:24–119:21.

[39] *Id.* at 120:5–121:22.

[40] *Id.* at 127:2–5; 141:3–142:23.

Frustrated with Belew's performance, Nix ultimately abandoned communication through ASL and resorted to self-help by exchanging handwritten notes in English directly with the medical staff.[41] Advanced Urology points to these notes as enough to overcome Belew's shortcomings as a matter of law. The Court does not agree.

To be sure, the "exchange of written notes" is expressly considered a form of "auxiliary aids and services." 28 U.S.C. §§ 36.303(b). However, according to the Eleventh Circuit, the use of written notes may not be appropriate in the medical setting. *Silva I*, 856 F.3d at 837 ("[T]he exchange of written notes is not appropriate when the matter involves more complexity, such as in communication of medical history or diagnoses, in conversations about medical procedures and treatment decisions, or in communication of instructions for care at home or elsewhere." (citing 28 C.F.R. § pt. 36, Appx. A)). *See also Liese*, 701 F.3d at 343 n.5 ("In construing this provision in the medical context . . . an individual with a disability who is deaf or hard of hearing may need a qualified interpreter to discuss with hospital personnel a diagnosis, procedures, tests, treatment options, surgery, or prescribed medication (*e.g.*, dosage, side effects, drug interactions, etc.)."). Instead, written

---

[41]   *Id*. at 125:3–24; 130:19–132:11; 133:9–16; 144:17–145:24.

notes are better suited for more basic, everyday interactions; for example, "a person with the same disability who purchases an item in the hospital gift shop may need only an exchange of written notes to achieve effective communication." *Liese*, 701 F.3d at 343 n.5 (citing 28 C.F.R. § pt. 36, Appx. A).

This case involves the precise concerns raised by the Eleventh Circuit. The parties agree Nix and Advanced Urology discussed complex medical terminology during her appointment. Advanced Urology, however, posits that the communication during Nix's appointment must have been effective because Nix is unable to identify any specific medical information not communicated with her medical providers.[42] This undisputed fact is not enough; to prove her claim, Nix need not "show actual deficient treatment or to recount exactly what [she] did not understand." *Silva I*, 856 F.3d at 829. Neither is it a sufficient defense at this stage for Advanced Urology to merely demonstrate that Nix "could participate in the most basic elements of a doctor-patient exchange." *Id.*

The Court does not find that Belew's strained efforts at ASL interpretation coupled with a mere four pages of handwritten notes created during the course of a three-hour appointment—which included two non-invasive ultrasounds—

---

[42] ECF 72 (Nix Dep. Tr. 149:11–150:17).

constitutes effective communication as a matter of law. *See Crane v. Lifemark Hosps., Inc.*, 898 F.3d 1130, 1135 (11th Cir. 2018) (finding "a genuine issue of material fact exists as to the question of whether there was effective communication" based on use of handwritten notes during medical appointment). At bottom, genuine issues of material fact exist as to whether the limited auxiliary aids employed by Advanced Urology impaired Nix's ability to effectively communicate medically relevant information with its staff.

### 2.     Intentional Discrimination

To recover compensatory damages, Nix must do more than prove a lack of effective communication; she "must also show that the exclusion or denial was the result of intentional discrimination." *Martin*, 621 F. App'x at 601. Under the disability anti-discrimination statutes, intentional discrimination may be established through deliberate indifference. *See also Silva II*, 2020 WL 7063826, at *3 ("[T]o recover monetary damages, a disabled person must further show that the hospital was deliberately indifferent to her federally protected rights."). Deliberate indifference may be found "when the defendant knew that harm to a federally protected right was substantially likely and . . . failed to act on that likelihood." *Id*. (citing *Liese*, 701 F.3d at 344). This is an "exacting standard" that "requires showing more than gross negligence." *McCullum*, 768 F.3d at 1147. *See also Silva II*, 2020 WL

7063826, at *3 ("In other words, the plaintiff must show ineffective communication done with knowledge that it was substantially likely to occur.") (quoting *Crane*, 898 F.3d at 1135).

To demonstrate deliberate indifference, Nix points to Advanced Urology's process of hiring Belew. As noted, Belew is not an ASL-certified interpreter. His skills are, at best, "basic" or "intermediate." He is not a medical professional and, prior to Nix's appointment, had never interpreted in a medical setting. But based on Sherling's incorrect belief that Belew had previously interpreted in medical settings, Advanced Urology did not attempt to investigate or uncover any of this information before hiring him. According to Nix, this failure to vet Belew's abilities and background establishes deliberate indifference to her rights.

There is no requirement in federal or Georgia law that a medical facility provide an ASL-certified interpreter for deaf patients. To the contrary, the mere "failure . . . to provide [a patient] with an interpreter is not enough to support a finding of deliberate indifference." *McCullum*, 768 F.3d at 1147. *See also Martin*, 621 F. App'x at 604 ("[A] hospital's failure to provide an interpreter on demand is not sufficient to support a finding of deliberate indifference."); *Liese*, 701 F.3d at 343 ("[T]he simple failure to provide an interpreter on request is not necessarily deliberately indifferent to an individual's rights under the RA."); *Juech v. Children's*

*Hosp. & Health Sys., Inc.*, 353 F. Supp. 3d 772, 784 (E.D. Wis. 2018) ("In short, the fact that [defendant] did not provide [plaintiff] with an in-person interpreter when she requested one does not, without more, suggest deliberate indifference."). Nix, nonetheless, avers that the law demands a competent or qualified interpreter to ensure effective communication, and Advanced Urology knew it did not take the necessary steps to ensure Belew met this standard. This argument is not supported by the law in this Circuit.

For example, in *Saltzman v. Board of Commissioners of the North Broward Hospital District*, the Eleventh Circuit affirmed summary judgment in favor of the defendant hospital, finding it did not act with deliberate indifference. 239 F. App'x 484 (11th Cir. 2007). The plaintiff—a deaf individual who possessed a limited ability to read and write simple words in English and primarily communicated through ASL—visited defendant's hospital after suffering a stroke. *Id.* at 485–86. Defendant did not provide him an interpreter upon admission. *Id.* at 486. Two days later, plaintiff's daughter arrived and specifically requested an interpreter. *Id.* She repeated this request each day, and at one point, gave defendant's staff member a business card containing the contact information for an interpreting agency. *Id.* Defendant made one attempt to locate an interpreter, but the contacted agency could not provide an interpreter to fit plaintiff's

physician's schedule. *Id*. Defendant made no other attempt to locate or provide an interpreter during plaintiff's week-long hospital stay. *Id*. Instead, defendant's staff members communicated entirely through "fingerspelling, writing, and hand signals." *Id*. Due to this breakdown in communication, plaintiff could not "comprehend fully the meaning of the written term 'stroke'" *Id*. Notwithstanding these facts, the Eleventh Circuit found "no reasonable juror could find that [defendant's] conduct constituted intentional discrimination." *Id*. at 487. Specifically, the court found important that (1) defendant "had a policy in place for assisting hearing-impaired patients"; (2) "attempted to locate an interpreter" for plaintiff; and (3) "[t]here is no evidence that any [defendant] policymaker intended or expected hearing impaired people would be discriminated against in their hospital." *Id*. at 488. At bottom, the appellate court found that, although defendant may have acted negligently, "negligence is not intentional discrimination." *Id*.

Recently, in *Silva II*, the Eleventh Circuit vacated the district court's grant of summary judgment in favor of the defendant hospital on the issue of deliberate indifference. 2020 WL 7063826, at *3–4. In that case, plaintiffs visited defendant's facilities on numerous occasions from 2009 to 2014 and requested live, on-site ASL interpreters for those visits. *Id*. at *1. Defendant did not provide in-person

interpreters, but instead chose to rely on an alternative communication method called Video Remote Interpreting (VRI) that connected a patient with an interpreter located remotely through a portable screen. *Id*. According to plaintiffs, the VRI machines regularly malfunctioned, at which time defendant required a patient to rely on a family-member companion to translate or the exchange of written notes to communicate. *Id*. The Eleventh Circuit found plaintiffs presented sufficient evidence for a reasonable jury to conclude defendant acted with deliberate indifference to their rights. *Id*. at *3. The court stated that, "[w]hile the choice to rely primarily on VRI instead of in-person interpreters alone does not establish deliberate indifference . . . the plaintiffs presented substantial evidence that the VRI machines routinely failed to facilitate effective communication." *Id*. Specifically, the "malfunctioning of the VRI machines . . . was likely to occur each time [p]laintiffs visited [defendant's] hospitals." *Id*. Given the knowledge of routine malfunctions over a period of several years, the court found defendant's "continued reliance on VRI as an interpretive aid . . . was substantially likely to result in the impaired informational exchange experienced by [p]laintiffs," which caused "instances of ineffective communication as a result of a 'deliberate choice' by [defendant's] officials, rather than mere negligence." *Id*. at *4 (citations omitted).

Here, Nix has not presented evidence to defeat summary judgment on the deliberate indifference element. Unlike *Saltzman*, not only did Advanced Urology attempt to accommodate Nix's last-minute request for an in-person interpreter, it actually procured one for her appointment. As it turned out, Belew constituted a poor choice. And perhaps Advanced Urology should have more rigorously vetted his qualifications as an interpreter before hiring him. But there is no evidence that Advanced Urology knew it would be substantially likely Nix could not effectively communicate with her medical providers through Belew, yet did nothing about it. For example, although frustrated by Belew's performance, it is undisputed Nix never specifically informed Advanced Urology's medical staff that she needed or wanted a different interpreter.[43] In fact, Nix did not raise any grievance concerning Belew's performance until after the appointment.[44] For his part, Belew believed he and Nix adequately communicated during the appointment, with the exception of certain medical terminology.[45] Nix simply speculates her medical providers must have known she could not effectively communicate because of Belew's subpar performance. Even if true, the undisputed evidence shows her medical providers

---

[43]   ECF 72 (Nix Dep. Tr. 127:19–22; 129:11–16; 1145:25–146:13).

[44]   *Id*. at 130:1–18.

[45]   ECF 68 (Belew Dep. Tr. 49:16–18; 61:2–7).

willingly engaged in the exchange of written notes to facilitate communication. This belies any assertion Advanced Urology exhibited deliberate indifference. *See Sunderland v. Bethesda Hosp., Inc.*, 686 F. App'x 807, 818 (11th Cir. 2017) (holding evidence insufficient to support finding of deliberate indifference as to one plaintiff because he "was accommodated with pen and paper rather than the VRI or an in-person interpreter, but based on the record, his nurses had no reason to believe that the notes were an ineffective accommodation").

Nix also points to an exchange prior to the appointment in which, after Belew informed Nix he did not possess ASL certification, Belew told an Advanced Urology staff member Nix wanted a certified interpreter. According to Belew, the staff member responded, "[o]kay, we'll remember that for next time," but permitted Belew to go forward with the appointment.[46] This evidence, however, does not create a triable issue of fact. To reiterate, there is no requirement that a hospital provide an ASL-certified interpreter. And this evidence does not show Advanced Urology had knowledge of a substantial likelihood Nix would be unable to effectively communicate with her medical providers during her appointment, which was scheduled and arranged on short notice. At best, the

---

[46]   ECF 68 (Belew Dep. Tr. 23:14–25:8).

evidence demonstrates Advanced Urology should have done more to ascertain Belew's competency in ASL before hiring him. But this is not enough to demonstrate deliberate indifference. *Silva II*, 2020 WL 7063826, at *3 ("Negligence alone is not enough."); *Saltzman*, 239 F. App'x at 487–88 ("Negligence, even if gross, cannot constitute deliberate indifference."). Unlike *Silva II*, there is no evidence creating a triable issue of fact that Advance Urology had knowledge that Nix's rights were substantially likely to be violated, yet failed to act.[47]

---

[47] Nix avers that the protections afforded by the ACA are broader than those found in the RA because the former "requires covered entities to give primary consideration to a deaf person's choice of auxiliary aids and services." [ECF 56-1, at 25 (citing 45 C.F.R. § 92.102) (incorporating standards found at 28 C.F.R. § 35.160, which in relevant part state: "In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities.")]. This does not, however, change the result in this case. First, Nix's argument that the ACA applies a different standard than the RA in this context is contradicted by the law. *E.g., Vega-Ruiz v. Northwell Health*, No. 19-cv-0537-DRH-AYS, 2020 WL 207949, at *4 (E.D.N.Y. Jan. 14, 2020) ("[C]ourts dealing with discrimination claims under both the ACA and Rehabilitation Act have found it unnecessary to analyze ACA claims where there is also an Rehabilitation Act claim because Section 1557 of the ACA explicitly incorporates Section 504 of the Rehabilitation Act."). Second, if the Court were to adopt Nix's standard, a medical provider would be required to provide a patent's preferred accommodation without exception, thereby creating strict liability. Such a theory has been rejected by the Eleventh Circuit. *E.g., McCullum*, 768 F.3d at 1147 ("The simple failure to provide an interpreter on request is not necessarily deliberately indifferent to an individual's rights . . . . The regulations do not require healthcare providers to supply any and all auxiliary aids even if they are desired and demanded. . . . [C]onstruing the regulations in this manner

Finally, Nix argues that, even if she cannot demonstrate a triable issue of fact showing intentional discrimination, she is nonetheless entitled to a jury trial on nominal damages (although not specifically pleaded in the Amended Complaint) because there are fact issues regarding ineffective communication.[48] During oral argument, Nix pointed to *Tolbert v. Queens College* for the general proposition that "a plaintiff who has proven a civil rights violation, but has not proven actual compensable injury, is entitled as a matter of law to an award of nominal damages." 242 F.3d 58, 74 (2d Cir. 2001). In her reply brief, Nix also relies on *Berry-Mayes v. New York City Health and Hospitals Corporation*, which expressly declined to address the specific question. 712 F. App'x 111, 112 n.1 (2d Cir. 2018). Other federal courts have found nominal damages are not available in the absence of intentional discrimination. *E.g., Francois v. Our Lady of the Lake Found.*, No. CV 17-393-SDD-SDJ, 2020 WL 6066167, at *2 (M.D. La. Oct. 14, 2020) (holding plaintiff would only be entitled to nominal damages if "he carries his burden of proving intentional discrimination"); *Juech*, 353 F. Supp. 3d at 787 ("Although [plaintiff] argues that she may still pursue nominal damages [in the absence of deliberate

---

would effectively substitute 'demanded' auxiliary aid for 'necessary' auxiliary aid.") (citations and punctuation omitted).

48   ECF 91, at 15–16.

indifference], she offers no relevant authority for that proposition."). Given this authority, the Court finds Nix is not entitled to pursue an award of only nominal damages in this case. Advanced Urology is entitled to summary judgment on Nix's federal claims.

### b.    Nix's Common Law Claims

In her Amended Complaint, Nix additionally asserts claims for fraud, negligence, and intentional infliction of emotional distress. Advanced Urology has requested summary judgment on each of these claims. The Court addresses each in turn.

### i.    Fraud (Count IV)

Nix alleges Advanced Urology committed fraud by falsely representing Belew as an ASL-certified interpreter and medical professional by allegedly (1) telling her they hired a certified interpreter through an agency, and (2) dressing Belew in medical scrubs bearing Advanced Urology's insignia. A fraud claim contains five elements: "(1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." *Home Depot U.S.A., Inc. v. Wabash Nat. Corp.*, 314 Ga. App. 360, 367 (2012).[49] Advanced Urology argues it is entitled

---

[49]    The parties agree Georgia law governs Nix's common law tort claims.

to summary judgment because Nix has not presented evidence demonstrating the scienter element. The Court agrees.

As a threshold matter, for a fraud claim, Nix must present "some evidence from which a jury could find" Advanced Urology made "a false representation." *Johnson v. Johnson*, 323 Ga. App. 836, 838 (2013). She has failed to do so here. For example, Nix testified that, although Sherling told her she had found either a "certified" or "qualified" interpreter, Sherling did not represent Belew worked at Advanced Urology or as a medical professional.[50] And although a "false representation may simply be the omission or concealment of a material fact"— *Johnson*, 323 Ga. App. at 838—there is no indication Advanced Urology owed Nix a duty to inform her that Belew did not work as a medial professional simply because he wore scrubs. *See* O.C.G.A. § 23-2-53 ("Suppression of a material fact which a party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."). In fact, it is undisputed everyone working at Advanced Urology wore scrubs, not just nurses and

---

[50]   ECF 72 (Nix Dep. Tr. 92:15–93:16).

physicians. The lack of evidence showing Advanced Urology made actual false statements is fatal to Nix's claim.

Even assuming Advanced Urology made false statements, Nix must establish scienter; *i.e.*, an intent to deceive. *E.g., GLW Int'l Corp. v. Yao*, 243 Ga. App. 38, 41 (2000) ("With regard to the element of scienter, the gist . . . of an action for damages in tort based on the falsity of representations is that they must have involved actual moral guilt.") (punctuation omitted); *Farmers State Bank v. Huguenin*, 220 Ga. App. 657, 660 (1996) ("Where there is no evidence of scienter, that is, that the false statement was knowingly made with false design, there can be no recovery.") (punctuation omitted); *Haley v. Ga. Farm Bureau Mut. Ins. Co.*, 166 Ga. App. 596, 597 (1983) ("[A]n action for fraud and deceit must be based upon a representation or concealment which was made with the intention and purpose of deceiving the opposite party and for the purpose of injuring him."). Nix points to no evidence showing Advanced Urology acted with an intent to deceive or mislead her as to Belew's status. Therefore, Advanced Urology is entitled to summary judgment on the fraud claim.

### ii.   Negligence (Count V)

Nix alleges Advanced Urology is liable under principles of negligence for (1) allegedly fraudulent actions committed by Belew under a theory of respondeat

superior, and (2) breaching its duty to provide "safe, properly licensed, [and] properly vetted[ ] interpretive services to [Nix]."[51] A negligence claim requires four elements: "[A] duty, a breach of that duty, causation, and damages." *Collins v. Athens Orthopedic Clinic, P.A.*, 307 Ga. 555, 557 (2019). Advanced Urology argues Nix's claim is barred by Georgia's impact rule. The Court agrees.

Under Georgia law, "[i]n a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury." *Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 584 (2000) (quoting *Ryckeley v. Callaway*, 261 Ga. 828, 828 (1992)). *See also H.J. Russell & Co. v. Jones*, 250 Ga. App. 28, 30–31 (2001) ("Negligent conduct, without more, will not support a recovery for emotional distress. Damages are generally not available for mental pain, suffering, or emotional distress unless accompanied by physical or pecuniary loss or the result of malicious, wilful, and wanton action directed at the complainant."). The impact rule does not "appl[y] to *any* claim concerning negligent conduct," only "specifically to claims for negligent infliction of emotional distress." *McConnell v. Dep't of Labor*, 345 Ga. App. 669, 674 (2018) (emphasis in original). *See also Warnock*

---

[51]   ECF 12, ¶¶ 152, 160.

*v. Sandford*, 349 Ga. App. 426, 430 (2019) ("The [ ] complaint did not include a claim for negligent infliction of emotional distress. Instead, it asserted straightforward claims of negligence and gross negligence . . . [c]onsequently, the impact rule is not applicable in this case.").

It is true Nix has pleaded a straightforward claim of negligence.[52] However, Nix only seeks damages for her alleged "severe emotional distress."[53] Nix does not allege any economic or pecuniary loss. Neither does she allege or present evidence of a physical impact. Put another way, this is simply a negligent infliction of emotion distress claim dressed in different clothes. The label which Nix chose to attach to her claim is not dispositive, nor does it exclude the claim from the purview of the impact rule. *E.g., Spruell v. Harper*, No. CIVA 109-cv-356-TWT, 2009 WL 4041937, at *2 (N.D. Ga. Nov. 18, 2009) ("[T]he substance of the [p]laintiff's claim is what matters, not how he labels it."). Further, Nix does not allege or present evidence that her emotional distress resulted from Advanced Urology's "malicious, wilful, and wanton" actions. Even if it should have made a greater effort to investigate Belew's credentials before hiring him, there is nothing in the record raising such conduct to the degree of maliciousness, willfulness, or

---

[52]   ECF 12, ¶¶ 141–65.

[53]   ECF 12, ¶ 163.

wantonness as a matter of law.[54] Therefore, Nix's negligence claim is barred by the impact rule.

### iii.   Intentional Infliction of Emotion Distress (Count VI)

Nix alleges Advanced Urology's actions—and Belew's conduct attributable to Advanced Urology—caused her severe emotional distress. A claim for intentional infliction of emotional distress (IIED) requires four elements: "(1) The conduct must be intentional or reckless; (2) [t]he conduct must be extreme and outrageous; (3) [t]here must be a causal connection between the wrongful conduct and the emotional distress; and (4) [t]he emotional distress must be severe." *Cottrell v. Smith*, 299 Ga. 517, 521 (2016). Advanced Urology argues Nix has not established the second and fourth elements, both of which are questions of law. *Jones v. Fayette Family Dental Care, Inc.*, 312 Ga. App. 230, 232–33 (2011). The Court agrees.

Starting with the second element, "[c]onduct that is sufficiently extreme and outrageous is that which is so serious as to naturally give rise to such intense

---

[54] "To establish wilful and wanton conduct, a claimant must demonstrate that the defendant engaged in conduct such as to evidence a wilful intention to inflict the injury, or else was so reckless or so charged with indifference to the consequences as to justify the jury in finding a wantonness equivalent in spirit to actual intent." *Watson Used Cars, LLC v. Kirkland*, 343 Ga. App. 113, 115 (2017).

feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress." *Id*. at 232. Nix cannot rely on evidence showing Advanced Urology:

> [A]cted with an intent which is tortious or even criminal, or that [it] . . . intended to inflict emotional distress, or even that [its] conduct was characterized by malice, or a degree of aggravation that would entitle [Nix] to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Id*.

The record in this case does not support such a finding. It is undisputed Belew never acted in an inappropriate manner during Nix's appointment. There is no evidence Nix felt threatened by Belew or considered him a danger. And while Belew remained in the room during Nix's appointment, it is undisputed she never substantially undressed[55] or underwent an invasive physical exam. In sum, Advanced Urology's procurement of an unsatisfactory interpreter for a last-minute medical appointment does not rise to the level of "atrocious" or "utterly

---

[55] Nix testified that, to undergo one ultrasound, she partially undressed as to expose only the area just below her naval [ECF 72 (Nix Dep. Tr. 140:15–21)].

intolerable" behavior. Nix presents no evidence otherwise creating a genuine issue of material fact.

For the fourth element, severe emotional distress entails:

> [A]ll highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that liability arises. The law intervenes only where the distress inflicted is so severe that no reasonable person could be expected to endure it.

*Jones*, 312 Ga. App. at 233.

Nix likewise fails to meet this burden.[56] Although Nix presents evidence she suffers from "anxiety, sleeplessness, increased depression, and a fear of going to another doctor,"[57] she concedes she did not seek treatment in connection with any emotional harm allegedly suffered because of her appointment at Advanced Urology.[58] *See Jones*, 312 Ga. App. at 233 (affirming summary judgment on IIED claim and stating plaintiff "sought no treatment from any type of doctor, psychiatrist, psychologist, or counselor" after the at-issue incident).

---

[56]   *See Ghodrati v. Stearnes*, 314 Ga. App. 321, 323 (2012) ("Whether a claim of severe emotional distress is found is a question for the court.").

[57]   ECF 89, at 32.

[58]   ECF 72 (Nix Dep. Tr. 233:2–8).

Additionally, the evidence shows Nix has maintained her close relationship with her family and friends, as well as her passion for recreational travel.[59]

In sum, although the Court does not take the seriousness of Nix's medical conditions lightly, nor does it discount the frustration and hardship she endured during her medical appointment, Nix has failed to support her emotional distress claim. *See Ghodrati v. Stearnes*, 314 Ga. App. 321, 324 (2012) ("Emotional distress can take the form of highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that liability arises.").

## IV.    CONCLUSION

Nix's motion for partial summary judgment [ECF 56] is **DENIED** and Advanced Urology's motion for summary judgment [ECF 77] is **GRANTED**. The Clerk is **DIRECTED** to enter judgment in favor of Advanced Urology and close the case.

SO ORDERED this the 14th day of December 2020.

Steven D. Grimberg
United States District Court Judge

---

[59]    ECF 72 (Nix Dep. Tr. 210:17–211:13; 233:4–8).